J-S29033-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.R.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF R.D., FATHER | : | |
| | : | |
| | : | No. 171 EDA 2018 |

Appeal from the Order Entered November 8, 2017
in the Court of Common Pleas of Bucks County Orphans' Court at No(s):
2017-9070

| | | |
|---|---|---|
| IN THE INTEREST OF: J.K.L.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF R.D., FATHER | : | |
| | : | |
| | : | No. 173 EDA 2018 |

Appeal from the Order Dated October 30, 2017
in the Court of Common Pleas of Bucks County Orphans' Court at No(s):
2017-9069

BEFORE: PANELLA, J., MURRAY, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.: **FILED JUNE 28, 2018**

Appellant, R.D. ("Father"), files these consolidated appeals from the

decrees dated October 30, 2017, and entered on November 8, 2017,[1] in the

_____

* Former Justice specially assigned to the Superior Court.

[1] The subject decrees were dated October 30, 2017. However, as to R.R.D., the clerk did not provide notice pursuant to Pa.R.C.P. 236(b) until November

Bucks County Court of Common Pleas, granting the petitions of the Bucks County Children and Youth Social Services Agency ("BCCYSSA") and involuntarily terminating his parental rights to his minor, dependent children, a daughter, J.K.L.D., born in June 2014, and a son, R.R.D., born in May 2011 (collectively, the "Children"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b).[2] In addition, on March 22, 2018, counsel for Father ("Counsel") filed with this Court a Petition for Leave to Withdraw as Counsel and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967) averring the within appeal is frivolous. After review, we grant Counsel's petition to withdraw and affirm the trial court's decrees.

The trial court summarized the relevant procedural and factual history as follows:

_____

8, 2017. Moreover, as to J.K.L.D., there is no notation on the docket that notice was given and that the order was entered for purposes of Pa.R.C.P. 236(b). Our appellate rules designate the date of entry of an order as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)." Pa.R.A.P. 108(b). Further, our Supreme Court has held that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given." ***Frazier v. City of Philadelphia***, 557 Pa. 618, 621, 735 A.2d 113, 115 (1999). While we consider both matters on the merits, we caution the Bucks County Prothonotary's Office to comply with the rules governing the entry of orders.

[2] By separate decrees entered the same date, the trial court involuntarily terminated the parental rights of the Children's mother, J.M. a/k/a J.A.M. ("Mother"). Mother has not filed an appeal and is not a party to the instant appeal.

- 2 -

J.D., presently three and one-half (3 1/2) years of age, was born [in June 2014] and R.R.D., now six and one-half (6 1/2) years old, was born [in May 2011]. R.R.D. was in the care of [BCCYSSA] for a short period of time during 2012. Despite R.R.D. having been returned to Mother after that time, both [c]hildren came into the care of [BCCYSSA] on December 21, 2015.[3]

Father testified that he was incarcerated when the Children came into the care of [BCCYSSA] in 2015. Father has been incarcerated for all but five (5) months since the Children came into care. While incarcerated, Father has been reported for multiple misconducts. At least two (2) of the misconducts involved Father's possession of contraband in the correctional facility. The most recent misconduct, in May 2017, resulted from Father testing positive for suboxone. . . . .

Trial Court Opinion ("T.C.O."), 1/24/18, at 1-2 (citations to record omitted).

BCCYSSA filed petitions to terminate Mother's and Father's parental rights on June 16, 2017.[4] The trial court held a hearing on October 25, 2017, and Mother and Father, who were both incarcerated, were present and represented by counsel. In support of the petitions to terminate, BCCYSSA presented the testimony of Jeneen Overberger, a BCCYSSA caseworker, as well as Mother and Father. BCCYSSA further offered Exhibits 1 through 4, which were admitted without objection. N.T. Hearing, 10/25/17, at 4. Mother

---

[3] The Children came into care because Foster Mother, with whom the Children had already been residing pursuant to voluntary placement, could not access medical care for the Children. Notes of Testimony ("N.T."), 10/25/17, at 57-58. Thereafter, the Children were adjudicated dependent on March 30, 2016. *Id.* at 5. As to Father, the Children's goal was changed from reunification to adoption on March 21, 2017. *Id.* at 37.

[4] BCCYSSA sought termination of Mother's parental rights pursuant to Section 2511(a)(1), (2), (5), and (8), and termination of Father's parental rights pursuant to Section 2511(a)(2), (5), and (8). *Id.* at 3.

and Father each testified on their own behalf.[5]  In addition, the Children were represented by a guardian *ad litem* during this proceeding who participated in the questioning.[6]

By decrees dated October 30, 2017, and entered November 8, 2017, the trial court involuntarily terminated the parental rights of Father to the

---

[5] Mother additionally offered an exhibit, M-1, which was marked but never entered.  N.T. at 77.

[6] The guardian *ad litem* ("GAL"), Lisa Ann Horne, Esquire, argued in favor of termination of Father's parental rights at the hearing.  ***Id.*** at 106-07.  During the hearing, Attorney Horne represented the Children's legal interests and best interests.  Pursuant to order dated and entered August 4, 2017, the court appointed Attorney Horne to represent both sets of interests after she filed a motion averring that no conflict existed.

This Court has recently held that we will address *sua sponte* the failure of an orphans' court to appoint counsel pursuant to 23 Pa.C.S.A. 2313(a).  ***See In re K.J.H.***, 180 A.3d 411, 414 (Pa.Super. 2018).  Our Supreme Court, in ***In re Adoption of L.B.M.***, 639 Pa. 428, 161 A.3d 172 (2017) (plurality), held that Section 2313(a) requires that counsel be appointed to represent the legal interests of any child involved in a contested involuntary termination proceeding.  The Court defined a child's legal interest as synonymous with his or her preferred outcome.  With respect to this Court's holding in ***In re K.M.***, 53 A.3d 781 (Pa.Super. 2012), that a GAL who is an attorney may act as counsel pursuant to Section 2313(a) so long as the dual roles do not create a conflict between the child's best interest and legal interest, the ***L.B.M.*** Court did not overrule it.

Here, Attorney Horne averred there was no conflict, and the court thereafter considered and determined that no conflict existed; therefore, we do not remand this matter.  ***Cf. In re T.M.L.M.***, 2018 PA Super 87 (filed April 13, 2018) (remand for further proceedings when six-year-old child's preference was equivocal and the attorney neglected to interview the child to determine whether legal and best interests were in conflict).

Children.[7]  On November 28, 2017, Father, through appointed counsel, filed notices of appeal.  Counsel filed a Statement of Intent to File *Anders* Brief in Lieu of Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(c)(4) and *In re J.T.*, 983 A.2d 771 (Pa.Super. 2009).  This Court consolidated Father's appeals *sua sponte* on February 5, 2018.

When counsel files an *Anders* brief, this Court may not review the merits of the appeal without first addressing counsel's request to withdraw. *Commonwealth v. Washington*, 63 A.3d 797, 800 (Pa.Super. 2013); *see also Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa.Super. 2005) (stating, "[w]hen faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.") (citation omitted).  In *In re V.E. & J.E.*, 611 A.2d 1267 (Pa.Super. 1992), this Court extended the *Anders* principles to appeals involving the termination of parental rights.  *Id.* at 1275.  Counsel appointed to represent an indigent parent on appeal from a decree involuntarily terminating parental rights may therefore petition this Court for leave to withdraw representation and submit an *Anders* brief.  *In re S.M.B.*, 856 A.2d 1235, 1237 (Pa.Super. 2004).

---

[7] The decrees do not specify the subsections under which the court terminated Father's parental rights.  However, we observe that in its opinion the trial court finds that BCCYSSA established grounds for termination pursuant to Subsections 2511(a)(1), (2), (5), and (8), and that termination serves the Children's best interests pursuant to Subsection 2511(b).  T.C.O. at 3, 7-10. The court incorrectly states that BCCYSSA pursued termination of Father's parental rights under Section 2511(a)(1).  *Id.* at 3.

In **Commonwealth v. Santiago**, 602 Pa. 159, 978 A.2d 349 (2009), our Supreme Court explained, "the major thrust of **Anders** . . . is to assure that counsel undertakes a careful assessment of any available claim that an indigent appellant might have." **Id.** at 174, 978 A.2d at 358. The Court stated that this "is achieved by requiring counsel to conduct an exhaustive examination of the record and by also placing the responsibility on the reviewing court to make an independent determination of the merits of the appeal." **Id.**

To withdraw, pursuant to **Commonwealth v. Millisock**, 873 A.2d 748 (Pa.Super. 2005) and its progeny, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*) (citing **Commonwealth v. Lilley**, 978 A.2d 995, 997 (Pa.Super. 2009)); **see also Commonwealth v. Orellana**, 86 A.3d 877, 880 (Pa. Super. 2014). Counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." **Millisock**, 873 A.2d at 752.

This Court further reviews Counsel's **Anders** brief for compliance with the requirements set forth in **Santiago**, **supra**.

> [W]e hold that in the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

602 Pa. at 178-79, 978 A.2d at 361. "Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." **Commonwealth v. Goodwin**, 928 A.2d 287, 291 (Pa.Super. 2007) (*en banc*) (quoting **Commonwealth v. Wright**, 846 A.2d 730, 736 (Pa.Super. 2004)).

Counsel filed a petition to withdraw, wherein she asserts that she has made a conscientious review of the record and determined the appeal would be frivolous. Likewise, Counsel submitted a brief that complies with the requirements of **Anders** as set forth in **Santiago**, *supra*. Counsel attached to the petition to withdraw a copy of the letter she sent to Father advising him of his rights and enclosed a copy of the **Anders** brief therewith. Hence, we conclude that Counsel has complied with the procedural **Anders** requirements and proceed to a review of the merits.

Counsel's **Anders** brief raises the following issue for our review:

> Did the trial court commit an error of law by involuntarily terminating Father's parental rights under 23 Pa.C.S.[A. §] 2511(a)(1) when [BCCYSSA] had not petitioned for termination based on that section of the Adoption Act?

- 7 -

*Anders* brief at 5.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, [616 Pa. 309, 325, 47 A.3d 817, 826 (2012)]. "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at [325-26, 47 A.3d at] 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, [608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010)].

*In re T.S.M.*, 620 Pa. 602, 628, 71 A.3d 251, 267 (2013). "The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental

rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M., II*, 550 Pa. 595, 601, 708 A.2d 88, 91 (1998)).

In the case *sub judice*, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). We have long held that in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we analyze the trial court's termination decrees pursuant to subsections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), and (b).

We first address whether the trial court abused its discretion by terminating Father's parental rights pursuant to Section 2511(a)(2).

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those

grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015) (quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002)). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. . . . [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re A.L.D.*, 797 A.2d at 340 (internal quotation marks and citations omitted).

In *In re Adoption of S.P.*, 616 Pa. 309, 47 A.3d 817 (2012), our Supreme Court, in addressing Section 2511(a)(2), held that:

> incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*Id.* at 328-29, 47 A.3d at 828; *see also In re D.C.D.*, 629 Pa. 325, 346-47, 105 A.3d 662, 675 (2014) (holding that incarceration prior to child's birth and until child was at least seven years old rendered family reunification an unrealistic goal and, therefore, trial court was within its discretion when it terminated father's parental rights notwithstanding the agency's failure to follow court's initial directive that reunification efforts be made). The Court in *S.P.* further stated,

> [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental

care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S.[A.] § 2511(a)(2). *See e.g. Adoption of J.J.,* [511 Pa. 590, 605,] 515 A.2d [883, 891 (1986)] ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); [*In re*] *E.A.P.,* 944 A.2d [79, 85 (Pa.Super. 2008)](holding termination under § 2511(a)(2) was supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).

*In re Adoption of S.P.*, 616 Pa. at 331-32, 47 A.3d at 830 (footnote omitted).

In the case at bar, in finding grounds for termination pursuant to Section 2511(a)(2), the trial court reasoned, "[t]he Children have lacked proper parental care and control necessary for their well-being per §2511(a)(2). We found further that Father has not, cannot, and will not remedy those conditions within a reasonable time period, as he has no realistic plan for housing or employment, or for addressing the significant need to treat his substance abuse issues." T.C.O. at 7. In so stating, the court found as follows:

**A.   Father has Failed to Meet [BCCYSSA]'s Permanency Placement Plan (PPP) Objectives**

Presently, Father is serving back-time regarding a previously-imposed sentence. Father testified that he has been incarcerated for all but 5 months since the Children came into the care of [BCCYSSA]. As a result of a probation/parole violation which Father testified was due to his failure to pay restitution, on June 7, 2017, following a parole hearing, our colleague Judge Trauger imposed a sentence encompassing the remainder of back time, with no eligibility for parole. Father signed a stipulation with

regard to serving his back time. Father stated that he did not wish to be paroled before his maximum date because his housing options had been limited when he was on parole, and though he would be interested in living with his father, the Bucks County Adult Probation and Parole department disallowed that as an option.

Father admitted that [BCCYSSA]'s Permanency Placement Plan included the directive that he become and stay drug-free, a goal which, unfortunately, he has been unable to achieve. While incarcerated Father has been reported for several misconducts. The initial misconduct occurred the first day he was incarcerated, December 14, 2016, followed by misconducts on December 17, 2016, January 23, 2017 and May 12, 2017. Upon his first misconduct, Father was immediately placed in the Restricted Housing Unit ("RHU") for sixty (60) days. The two (2) December 2016 misconducts were related to the possession of contraband. Five (5) months after his incarceration, in May 2017, Father received a misconduct as a result of a positive urine sample, and received forty (40) additional days in the RHU.

Father's testimony included his statement that he has not received any treatment for substance abuse. He testified further that he has not participated in drug and alcohol classes, decision-making classes, or anger management classes during his incarceration. Father claimed that a medical evaluation performed a few months prior to the evidentiary hearing indicated that he did not need such treatment. Father did admit that he cannot presently provide suitable housing for the Children, and that he lacks present means to provide support for them. He has not had a visit with his Children for more than a year, having last seen them in the fall of 2016.

At the hearing on October 25, 2017, we also listened to the testimony of Jeneen Overberger, a caseworker for [BCCYSSA] who has been involved in this case since March 2017. Ms. Overberger testified that Father had failed to take any actions toward achieving the objectives of the PPP. Despite Father's claim that he received a mental health evaluation, [BCCYSSA] was never so informed.

**B. Father is Incapable of Providing Adequate Housing and Support for the Children**

During October through December 2016, before he returned to prison, Father was living in a recovery house and worked daily in a warehouse. He was responsible for weekly rent for which, when necessary, his father would assist in paying. Father testified that he is not presently capable of providing proper housing or support for the Children.

Ms. Overberger testified that since the Children came into care two (2) years ago, Father has never been in a position to provide for them.

Father faults [BCCYSSA] for limiting his visits with the Children. While [BCCYSSA] dictates the visitation schedule, and need not afford visitation once the Dependency Court has changed the goal to adoption, as occurred here, we do not condone a perceived lack of reasonable effort by [BCCYSSA] to effectuate visitation. Ms. Overberger noted that she had informed Father that [BCCYSSA] did not feel it was appropriate for the Children to visit Father during the periods when he was in the RHU. Ms. Overberger also testified that R.R.D. was traumatized after a visit at the prison, and [BCCYSSA] was concerned that future visits at the prison would have a further traumatic effect on the [c]hild. Ms. Overberger's testimony included the observation that Father had rarely visited with his [c]hildren when he was not incarcerated.

T.C.O. at 5-7 (citations to record and footnotes omitted).

A review of the record supports the trial court's finding of grounds for termination under Section 2511(a)(2) as it reveals Father failed to alleviate the Agency's concerns regarding his ability and capacity to care for the Children. Importantly, Father failed to comply with his Permanency Placement Plan ("PPP") goals aimed at reunification with the Children. As we discern no abuse of discretion or error of law, we do not disturb the court's findings.

Notably, Ms. Overberger confirmed that neither parent had been in a position to have custody of the Children at any time since the latter were

- 14 -

placed in care. N.T. at 37. Moreover, she indicated that neither parent was in such a position at the time of the hearing. *Id.* at 38. Indeed, Father acknowledged that he has been incarcerated all but five months since the Children have been in care, and as a result, he has been unable to care for the Children. *Id.* at 18. He further admitted that despite his incarceration, there were reunification objectives established as part of his PPP. *Id.* at 19. Ms. Overberger testified that Father has failed to complete the objectives of his plan. *Id.* at 36.

Father admitted that although he was to achieve and maintain sobriety, he received several misconducts while incarcerated as a result of the presence of controlled substances or unprescribed medications in his system, most recently in May 2017.[8] *Id.* at 19-20. Father further stated he had not undergone substance abuse treatment and had no appropriate housing or means of support for the Children. *Id.* at 21. He testified that he did have a mental health evaluation a few months prior to the time of the hearing; however, he was unsure if the evaluation was provided to BCCYSSA. *Id.* at 21. Critically, Ms. Overberger indicated that she was unaware that Father had an evaluation and had not been told that one was completed and available. *Id.* at 36-37.

As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting

---

[8] At that time, Father tested positive for suboxone. N.T. at 20.

responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa.Super. 2006). Moreover, Father cannot or will not remedy this situation. Hence, the record substantiates the conclusion that Father's repeated and continued incapacity, abuse, neglect, or refusal has caused Children to be without essential parental control or subsistence necessary for their physical and mental well-being. *See In re Adoption of M.E.P.*, 825 A.2d at 1272.

As noted above, in order to affirm a termination of parental rights, this Court need only agree with the trial court as to any one subsection of Section 2511(a) before assessing its determination under Section 2511(b). Therefore, we need not address any further subsections of Section 2511(a), *In re B.L.W.*, 843 A.2d at 384, and proceed to determine whether termination was proper under Section 2511(b). In this regard, our Supreme Court has stated:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M. [a/k/a E.W.C. & L.M. a/k/a L.C., Jr.]*, [533 Pa. 115, 123, 620 A.2d 481, 485 (1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 620 Pa. at 628-29, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008) (citation omitted).

"When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d at 1121 (internal citations omitted). Moreover,

> [w]hile a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d at 1219 (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011)) (quotation marks and citations omitted).

In the case *sub judice*, in determining that termination of Father's parental rights favors the Children's needs and welfare under Section 2511(b) of the Adoption Act, the trial court reasoned:

> As [BCCYSSA] clearly and convincingly established the criteria set forth by 23 Pa.C.S.[A. §] 2511(a)(1), (2), (5), and (8) for termination, we next examined, pursuant to §2511(b),

- 17 -

whether the termination of Father's parental rights served the best interests of the Children, considering their developmental, physical, and emotional needs and welfare. We found that it did so.

The Children, per a voluntary placement, have resided with their foster mother since August, 2015. The foster mother also has an adult daughter who lives in her home with the Children. Ms. Overberger testified that both adults are involved with the Children, meeting their needs, and providing appropriate and necessary guidance and affection. There are no special medical, emotional or developmental needs or concerns for either child, other than speech therapy for R.R.D. The foster mother is an adoptive resource for the Children, and [BCCYSSA] supports their adoption by her, assuming she passes all of the requisite background checks. We found the record clearly and convincingly established the existence of a substantial bond between the Children and the foster mother.

When considering what situation would best serve a child's needs and welfare, the trial court must examine the status of the natural parental bond and whether terminating the natural parent's rights would destroy something in existence that is necessary and beneficial to the child(ren).

> When conducting a bonding analysis, the court is not required to use expert testimony. . . .Social workers and caseworkers can offer evaluations as well. . . Additionally, Section 2511(b) does not require a formal bonding evaluation. . . "Above all else . . . adequate consideration must be given to the needs and welfare of the child.". . . A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights. . .

> Before granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child-the love, comfort, security, and closeness- entailed in a parent-child relationship, as well as the tangible dimension. Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve

- 18 -

the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

[*In re Z.P.*], 994 A.2d 1108, 1121 (internal citations omitted).

We found termination was warranted here. The record contains clear and convincing evidence that Father has not made reasonable or responsible strides toward adequately parenting the Children. The evidence suggests that Father has thus far failed to address his mental health and substance abuse issues. Additionally, Father has neither the present ability nor a reasonable future plan to provide adequate housing and support for himself or the Children.

While this [c]ourt does not doubt that Father loves his [c]hildren, the record is devoid of testimony or evidence of a necessary and beneficial relationship between Father and the Children, the existence of which, should Father's rights be terminated, would result in a negative effect on the Children. In sum, the record contains clear and convincing evidence that Father has been and continues to be, incapable of adequately parenting the Children.

"The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." [*In re Adoption of R.J.S.*], 901 A.2d 502, 513 (Pa.Super. 2006). When Father's repeated failure to remedy his parental incapacity is balanced against the Childrens' needs for permanence and stability, this [c]ourt has concluded that it would not be in the Childrens' best interests for their lives to remain on hold indefinitely, in hopes that Father will one day be able to act responsibly as their parent. Regrettably, then, Father is not entitled to relief. [*See In re Adoption of C.D.R.*], supra. at 1220.

T.C.O. at 8-10 (citations to record omitted).

Upon review, we again discern no abuse of discretion. The record supports the trial court's finding that the Children's developmental, physical

and emotional needs and welfare favor termination of Father's parental rights pursuant to Section 2511(b).

As indicated above, Ms. Overberger testified that neither parent had been in a position to have custody of the Children since the Children had been placed in care and, significantly, neither parent was in such a position at the time of the hearing. N.T. at 37-38. Father was incarcerated all but five months since the Children have been in care, and he last saw them prior to his incarceration in November of 2016.[9] *Id.* at 18, 23.

Moreover, and more importantly, the Children have resided in their current placement since August 2015, prior to entry of the shelter care order. *Id.* at 38, 59. Foster Mother, who has requested to be an adoptive parent and her adult daughter have a positive, affectionate relationship with the Children. *Id.* at 39-40. Ms. Overberger observed, the Children "seek guidance from both adults in the home. They seek their needs to be met by both adults. And they, you know, are bonded and affectionate with both adults in the home." *Id.* at 39; 59. As such, Ms. Overberger opined that termination of parental rights best serves the needs and welfare of the children. *Id.* at 40.

_____

[9] Ms. Overberger explained the Agency and the Agency's solicitor jointly decided that Father would not be permitted visitation. The factors they considered in reaching this decision were the fact that the Children's goal had been changed to adoption, BCCYSSA had petitioned for, and a hearing was scheduled with regard to, termination of parental rights, Father had not seen the Children on a regular basis, and R.R.D. had had a prior traumatic experience with prison visitation. N.T. at 55.

Thus, as confirmed by the record, termination of Father's parental rights serves the Children's developmental, physical and emotional needs and welfare and was proper pursuant to Section 2511(b). While Father may profess to love the Children, a parent's own feelings of love and affection for a child will not alone preclude termination of parental rights. **In re Z.P.**, 994 A.2d at 1121. At the time of the hearing, the Children had been in care almost two years and resided with Foster Mother for over two years. They are entitled to permanency and stability, for as we have stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." **Id.** at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." **In re B., N.M.**, 856 A.2d 847, 856 (Pa.Super. 2004) (citation omitted), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005).

Based on the foregoing analysis of the trial court's termination of Father's parental rights, we agree with Counsel that the within appeal is wholly frivolous. Further, our independent review of the record does not reveal any additional, "non-frivolous issues that counsel, intentionally or not, missed or misstated." **Commonwealth v. Yorgey**, 2018 WL 2346441, at *12 (Pa.Super. May 24, 2018). As such, we grant Counsel's petition to withdraw and affirm the decrees of the trial court.

Petition to withdraw granted. Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/28/18